IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER CHAPLA<br>1536 W. Ritner Street<br>Philadelphia, PA 19145<br><br>   *Plaintiff*,<br><br>  v.<br><br>FATHER JUDGE HIGH SCHOOL<br>3301 Solly Avenue<br>Philadelphia, PA 19136<br>  and<br>THE ARCHDIOCESE OF PHILADELPHIA<br>d/b/a Archdiocese of Philadelphia Schools<br>(Secondary Schools)<br>222 North 17th Street<br>Philadelphia, PA 19103<br>  and<br>THE OFFICE OF CATHOLIC EDUCATION<br>222 North 17th Street<br>Philadelphia, PA 19103<br><br>   *Defendants*. | CIVIL ACTION<br><br>No.: 22-3971<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CIVIL ACTION COMPLAINT**

Plaintiff, Peter Chapla, by and through his undersigned counsel, hereby avers as follows:

## I.   INTRODUCTION

1. Plaintiff has initiated this action to redress for violations by Father Judge High School, the Archdiocese of Philadelphia d/b/a Archdiocese of Philadelphia Schools (Secondary Schools) and The Office of Catholic Education (hereinafter collectively referred to as "Defendants," unless indicated otherwise) of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), the Age Discrimination in Employment Act ("ADEA" - 29 U.S.C. §§ 621 *et.*

*seq.*), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"). Plaintiff asserts herein that he was unlawfully terminated from his employment in violation of these laws and seeks damages as set forth more fully herein.

## II.    JURISDICTION AND VENUE

2.   This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3.   This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.   Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5.   Plaintiff is proceeding herein under the ADA and the ADEA and has properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## III.    PARTIES

6.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant Father Judge High School is a Roman Catholic high school in Philadelphia, PA which is operated by Defendant the Archdiocese of Philadelphia d/b/a Archdiocese of Philadelphia Schools (Secondary Schools) ("The Archdiocese").

6. The Archdiocese is an unincorporated association which oversees the activities of the Roman Catholic Church for five counties in the southeastern part of the Commonwealth of Pennsylvania.

7. The Office of Catholic Education promotes the advancement of diocesan schools in the Archdiocese of Philadelphia and, upon information and belief, exercised control over the terms and conditions of Plaintiff's employment, including his discipline and termination.

8. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, advertisement, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

9. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

### IV.    FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was born in 1961 and was 60 years old on the date of his unlawful termination by Defendants.

12. Plaintiff was hired by Defendants in or about May of 2018 as the Principal of Father Judge High School and was employed by Defendants for approximately four (4) years.

13. At all relevant times herein, Plaintiff reported to: Brian Patrick King, President of Father Judge High School; Dr. Patricia Rigby, the Assistant Superintendent at the Office of Catholic Education; and Nancy Kurtz, the interim superintendent.

14. Throughout his tenure with Defendants, Plaintiff was a hard-working and dedicated employee who lacked any disciplinary history, prior to being issued a pretextual performance improvement plan (a/k/a "PIP"), as discussed *infra.*

15. Plaintiff has and continues to suffer from disabilities, including but not limited to prostate cancer (among other related health conditions). Plaintiff is also a Marine Corps combat veteran with service-connected disabilities from Veterans Affairs ("VA"), which include hearing loss, knee injury, skin lesions and Post-Traumatic Stress Disorder.

16. Plaintiff's aforesaid medical conditions, at times, limits his ability to perform some daily life activities, including but not limited to normal cell growth. *See* 29 C.F.R. §1630.2(j)(3)(iii).

17. Despite Plaintiff's disabilities (discussed *supra*), he was still able to perform the essential functions of his job with Defendants, however, Plaintiff did require reasonable medical accommodations at times, including but not limited to intermittent medical leave.

18. For example, beginning in March of 2020, Plaintiff required intermittent medical leave to undergo required treatment, observation, and continuing diagnostics for prostate cancer.

19. Plaintiff's requests for intermittent medical leave continued up and through the time of his termination.

20. While Plaintiff did not let his health conditions or needs interfere with his job performance, Plaintiff kept his management apprised of his disability and shared that, at times, he become fatigued due to his health. Plaintiff also shared other updates related to his disability as was necessary or helpful.

21. Despite being aware of his aforesaid serious health conditions and need for time off related to same, Defendants' management did not properly inform Plaintiff of his individualized FMLA rights; thus, Defendants failed to follow proper notice, designation, and informational regulations of the FMLA.

22. Instead of providing Plaintiff notice of his individualized FMLA rights, Defendants' management instead subjected him to hostility and animosity pertaining to his need for intermittent time off.

23. For example, on or about April 5, 2022, King (upon information and belief, is aged in his early 40's) blind-sided Plaintiff with the baseless aforementioned "PIP."

24. Plaintiff ultimately signed the PIP not because he agreed that it was warranted, but rather, to retain his employment and to illustrate his continued commitment to the school (irrespective of his strong disagreement with it).

25. The PIP identified alleged problem areas with Plaintiff's supervisory skills and purported to provide Plaintiff with the remaining part of the academic year to improve or face "termination."

26. It was obvious that the PIP: (a) was nothing more than the creation of a paper trail to justify Plaintiff's termination since nothing negative existed – from a personnel file standpoint - in the preceding four (4) years of his employment; (b) was issued shortly before the end of the academic year to ensure that Plaintiff would continue as principal to avoid disruption to students

or colleagues despite that his termination was guaranteed; and (c) there was nothing Plaintiff could do to satisfy alleged performance concerns that were pretextually identified in the first place.

27. The aforesaid PIP which Plaintiff was issued was totally baseless. The PIP referenced areas for improvement that were either subjective or vague, such as: (a) "develop long term vision;" (b) "improve productivity of administrative staff;" (c) have more "visibility" by spending "more time out of the office talking and listening to faculty, staff and students;" and (d) to onboard new teachers more effectively with different software offered by the school.

28. Plaintiff's PIP did not identify specific performance problems, any metrics which he did not meet, and gave him until the end of academic year to complete tasks such as onboarding teachers which are normally not applicable at the tail end of a school year.

29. Defendants never place people on a PIP at the start of the 4th marking period in a high school setting. It is the most demanding and busiest time of year, especially so during a worldwide pandemic where there was a deluge of end of the year events, logistics, planning and preventing academic failures, commencement and summer school planning. Defendants' PIP constituted an unreasonable expectation for a professional school administrator (such as Plaintiff) to adequately meet the nebulous requirements outlined in the PIP, in one marking period from April 5th to June 2, 2022.

30. In light of Plaintiff's passion for the students, education and the school, he nonetheless did everything that he could to address the amorphous preferences issued in the PIP.

31. On or about June 2, 2022, Plaintiff was abruptly informed that he was terminated in a conference with three individuals: (a) King; (b) Jim Molnar (Human Resources Manager); and (c) Nancy Kurtz (Interim Superintendent of Secondary Schools for the Archdiocese of Philadelphia).

32. Plaintiff was terminated following an exemplary career, based upon literally made-up allegations of not having enough "vision."

33. The stated alleged reasons for Plaintiff's termination were completely pretextual. First, Defendants have been engaging in a practice over time of hiring younger employees at all levels, while pushing out older employees based upon their age. Upon information and belief, following his termination, Plaintiff was replaced by a substantially younger individual, James Hozier (who is aged in his 30's).

34. Moreover, prior to the issuance of the PIP, Plaintiff had received continual great feedback, very good evaluations, no warnings or notices of concerns, annual raises and bonuses for outstanding performance, and recognition for the school's successes.

35. In fact, the school was recognized as an Archdiocese flagship school. Plaintiff was also commended on his handling of operations and approaches to practices and policies relative to the pandemic. As such, the alleged issues set forth within the PIP were: (a) totally new; (b) contradicted by Plaintiff's prior recognition and evaluations; and (c) intentionally subjective to ensure Plaintiff's pretextual termination regardless of expended effort.

36. Adding to the overwhelming appearance of discrimination being the primary rationale for Plaintiff's termination, Defendants' management (particularly Molnar) repeatedly pressed Plaintiff to "resign" instead of being documented as terminated.

37. Molnar's repeated requests for Plaintiff to resign in lieu of termination were verbal and in writing. This begs the question that if Plaintiff was truly being terminated for "unsatisfactory performance," why would Defendants (in a highly regulated educational industry) repeatedly try to convince Plaintiff to resign to avoid having the termination documented by Defendants accurately?

7

38. Additionally, Plaintiff was pressed repeatedly to sign a severance agreement which would have Plaintiff waive all legal claims of discrimination and retaliation. Nothing to Plaintiff's knowledge required faculty, administration, or management to be offered severance pay when terminated for a cause-based reason. This is well-established evidence of discrimination, retaliation and pretext (as an attempt to conceal discrimination or retaliation).[1]

39. Plaintiff believes and therefore avers that he was terminated due to his advanced age and health conditions/needs, in violation of the ADA, FMLA and ADEA.

### Count I
### Violations of the Americans with Disabilities Act, as amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination;
[2] Retaliation; and [3] Failure to Accommodate)

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff suffered from qualifying health conditions under the ADA (as amended), which (at times) affected his ability to perform some daily life activities – discussed *supra*.

42. Plaintiff requested reasonable accommodations from Defendants, including but not limited to intermittent medical leave on occasion.

---

[1] *See e.g., Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013) (an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.,* 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011) (finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs.,* Inc., 640 F. Supp. 2d 1267 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace,* 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed.R.Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc.,* 2012 WL 5268365, at *2 (N.D. Ind. 2012) (holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

43. In response to Plaintiff's health conditions and need for accommodations, Plaintiff was subjected to animosity and hostility by Defendants' management, including but not limited to being issued the aforementioned baseless and pretextual PIP.

44. On or about June 2, 2022, Plaintiff was terminated from his employment with Defendants for the pretextual reasons outlined above.

45. It is believed and therefore averred that Plaintiff was terminated from Defendants because of: (a) his known and/or perceived disabilities; (b) his record of impairment; and/or (c) because he requested accommodations.

46. Plaintiff also believes and therefore avers that he was terminated as a result of Defendants' refusal to accommodate his disabilities.

47. These actions as aforesaid constitute violations of the ADA, as amended.

**Count II**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Interference & Retaliation)**

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

50. Plaintiff requested leave from Defendants, his employers, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

51. Plaintiff had at least 1,250 hours of service with Defendants during his last full year of employment.

52. Defendants are engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

53. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

50. Defendants committed interference and retaliation violations of the FMLA by: (a) terminating Plaintiff for requesting and/or exercising his FMLA rights; (b) terminating Plaintiff to intimidate her and/or prevent him from taking FMLA-qualifying leave in the future; (c) by considering Plaintiff's FMLA leave needs in making the decision to terminate him; (d) failing to follow proper notice, designation, and informational regulations of the FMLA; and/or (e) engaging in conduct which discouraged Plaintiff from exercising his FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave.

54. These actions as aforesaid constitute violations of the FMLA.

### Count III
### Violations of the Age Discrimination in Employment Act ("ADEA")
(Age Discrimination)

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Plaintiff believes and therefore avers herein that Defendants terminated his employment because of his advanced age and replaced Plaintiff with a substantially younger individual.

57. These actions as aforesaid constitute unlawful retaliation under the ADEA.

**Count IV**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Actual/Perceived/Record of Disability Discrimination;**
**[2] Retaliation; [3] Failure to Accommodate; and [4] Age Discrimination)**

58. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59. Plaintiff re-asserts and re-alleges each and every allegation of Counts I and III of this Complaint, *supra*, as they constitute identical violations of the PHRA.

60. These actions as aforesaid constitute violations of the PHRA.

**Count V**
**Violations of the Philadelphia Fair Practices Ordinance ("PFPO")**
**([1] Actual/Perceived/Record of Disability Discrimination;**
**[2] Retaliation; [3] Failure to Accommodate; and [4] Age Discrimination)**

61. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62. Plaintiff re-asserts and re-alleges each and every allegation of Counts I, III and IV of this Complaint, *supra*, as they constitute identical violations of the PFPO.[2]

63. These actions as aforesaid constitute violations of the PFPO.

---

[2] *See Ahern v. Eresearch Technology, Inc.,* 183 F.Supp.3d 663, 668 (E.D.Pa. 2016) (internal citations omitted):

> [C]laims based on statutes promulgated by other levels of government have been found to be within the scope of an administrative charge…. This determination was based upon the fact that the defendant was on notice of the claim and the new charge was within the scope of the previous filing.
>
> In this case, Plaintiff awaited a decision from the EEOC before filing the instant suit. Further, Plaintiff's Title VII claim deals with the same issue covered by the PFPO: discrimination on the basis of pregnancy. Because of this, the PFPO claims can reasonably be deemed within the scope of the original charge and discoverable upon reasonable investigation by the EEOC. Accordingly, Plaintiff's PFPO claims shall be permitted to proceed.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

        Respectfully submitted,

        **KARPF, KARPF & CERUTTI, P.C.**

        */s/ Adam C. Lease*
        Adam C. Lease, Esq.
        Two Greenwood Square
        3331 Street Road, Suite 128
        Bensalem PA 19020
        (215) 639-0801 Phone
        (215) 639-4970 Fax
        *Attorneys for Plaintiff*

Date: July 19, 2023