**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PETER CHAPLA | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | CASE NO.: 22-3971 |
| v. | : | |
| | : | |
| FATHER JUDGE HIGH SCHOOL | : | |
| and | : | |
| THE ARCHDIOCESE OF PHILADELPHIIA | : | |
| D/B/A ARCHDIOCESE OF PHILADELPHIA | : | |
| SCHOOLS (SECONDARY SCHOOLS) | : | |
| and | : | |
| THE OFFICE OF CATHOLIC EDUCATION | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Adam C. Lease, Esq.
**KARPF, KARPF & CERUTTI, P.C.**
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801 Phone
(215) 639-4970 Fax
alease@karpf-law.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PETER CHAPLA | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | CASE NO.: 22-3971 |
| v. | : | |
| | : | |
| FATHER JUDGE HIGH SCHOOL | : | |
| and | : | |
| THE ARCHDIOCESE OF PHILADELPHIIA | : | |
| D/B/A ARCHDIOCESE OF PHILADELPHIA | : | |
| SCHOOLS (SECONDARY SCHOOLS) | : | |
| and | : | |
| THE OFFICE OF CATHOLIC EDUCATION | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

      **AND NOW,** this _____ day of _____, 2024, upon consideration of

Defendants' Motion for Summary Judgment and Plaintiff's Response thereto, it is hereby

**ORDERED** and **DECREED** that Defendants' Motion for Summary Judgment is **DENIED**.

      The Parties are hereby granted 120 days to complete full discovery.


                      BY THE COURT


                      _____
                      The Honorable Mia Roberts Perez, U.S.D.J.

## <u>TABLE OF CONTENTS</u>

TABLE OF
AUTHORITIES ......................................................................................................... ii

I. INTRODUCTION .....................................................................................................1

II. STATEMENT OF FACTS..........................................................................................4

III. LEGAL ARGUMENT

    A.   Standard of Review……………………………………………………......4

    B.   The ministerial exception is inapplicable to the instant matter………………5

    C.   Defendants' attempts to rely upon piecemeal statements contained
        in documents should be rejected as not reflective of Plaintiff's
        actual job duties……………………………………………………..…13

    D.  Questions of material fact necessitate the denial of Defendants' motion……..19

IV. CONCLUSION.......................................................................................................21

## **TABLE OF AUTHORITIES**

CASES:                                                                                  PAGE:

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157,
26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)……………………………………...………………..………4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49,
91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)…………………………………………………………..5

*Bell v. Judge Mem'l Catholic High Sch.*, No. 2:20-cv-00829-RJS-JCB,
2023 U.S. Dist. LEXIS 90351 (D. Utah May 22, 2023)…………………………………..13, 14, 19

*Butler v. Archdiocese of Galveston Hous.*, No. H-08-897,
2008 U.S. Dist. LEXIS 138802, at *12-13 (S.D. Tex. July 17, 2008)……………..………19-20

*Clark v. Newman Univ., Inc.*, No. 19-1033-KHV,
2022 U.S. Dist. LEXIS 164360, at *39 (D. Kan. Sep. 12, 2022)……………………….…..19

*DeWeese-Boyd v. Gordon Coll.*, 487 Mass. 31, 51-54, 163 N.E.3d 1000 (2021),
*cert. denied,* 142 S. Ct. 952, 952 (2022)……………………………………………...…15-18

*Ference v. Roman Catholic Diocese of Greensburg*, Civil Action No. 22-797,
2023 U.S. Dist. LEXIS 8416 (W.D. Pa. Jan. 18, 2023)…………………………………..……11

*Hartwig v. Albertus Magnus Coll.*, 93 F. Supp. 2d 200, 211 (D. Conn. 2000)…………………..19

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
565 U.S. 171, 132 S. Ct. 694 (2012)…………………………………………………………*passim*

*MacDonald v. Grace Church Seattle,* No. C05-0747C,
2006 U.S. Dist. LEXIS 54187, at *7 (W.D. Wash. Aug. 4, 2006)………….………………………5

*McMahon v. World Vision, Inc.,* No. C21-0920 JLR,
2023 U.S. Dist. LEXIS 211417 (W.D. Wash. Nov. 28, 2023)……………………………5, 7, 11

*Our Lady of Guadalupe School v. Morrisey-Berru*, 140 S. Ct. 2049 (2020)………………..*passim*

*Patsakis v. Greek Orthodox Archdiocese of Am.*,
339 F. Supp. 2d 689, 697 (W.D. Pa. 2004)………………………………………………..…6

*Petruska v. Gannon Univ.*, 462 F.3d 294, 307 n.10 (3d Cir. 2006)………………………………6

*Ratliff v. Wycliffe Assocs., Inc.*, No. 6:22-cv-1185-PGB-RMN,
2023 U.S. Dist. LEXIS 92811, at *12 (M.D. Fla. May 26, 2023)…………………………………11

*Richardson* v. *Northwest Christian Univ.*,
242 F. Supp. 3d 1132, 1138-1139, 1145-1146 (D. Ore. 2017)…………………………....….…..17

*Rosati v. Toledo*, 233 F. Supp. 2d 917, 921 (N.D. Ohio 2002)………………………………………5

*Siegel Transfer, Inc. v. Carrier Express, Inc.*,
54 F.3d 1125, 1127 (3d Cir. 1995)……………………………………………………………....…4

*Trotter v. United Lutheran Seminary,* 2021 U.S. Dist. LEXIS 142222,
2021 WL 3271233 (E.D.Pa July 30, 2021)...……………………………………………………..10

*Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1026 (10th Cir. 2022)………………………..19

*Woods v. Seattle's Union Gospel Mission*, 197 Wash. 2d 231, 252-53,
481 P.3d 1060, 1070 (2021)………………………………………………………………………20

STATUTES:

Fed. R. Civ. P. 56……………………………………………………………………………………4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PETER CHAPLA | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | CASE NO.: 22-3971 |
| v. | : | |
| | : | |
| FATHER JUDGE HIGH SCHOOL | : | |
| and | : | |
| THE ARCHDIOCESE OF PHILADELPHIIA | : | |
| D/B/A ARCHDIOCESE OF PHILADELPHIA | : | |
| SCHOOLS (SECONDARY SCHOOLS) | : | |
| and | : | |
| THE OFFICE OF CATHOLIC EDUCATION | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows in Opposition to Defendants' Motion for Summary Judgment:

**I.    Introduction**

Defendants' motion reads as if all employees from every religious organization are unable to ever bring a cause of action against their employer. Indeed, Defendants argue that this Court should hold that Plaintiff, a lay Principal with no religious authority, training, background or job duties, was allegedly a minister, by reason of what is contained in certain documents such as handbooks; Defendants' letterhead; email signatures and the like. In doing so, Defendants ignore U.S. Supreme Court precedent, which expressly holds that each situation is to be analyzed on a case-by-case basis and what matters, really, is what the plaintiff's actual job duties were, and not "sound bites."

Plaintiff was unquestionably not a minister and performed administrative, not ministerial, duties while he was employed by Defendants. *See* Plaintiff's response to Defendants' Statement of [Allegedly] Undisputed Material Facts ("SOF") at ¶¶ 13 - 16; 18; 46; 47; 49; 52; 66; 72; 77; 78; 130; and 156. Whether or not the ministerial exception applies is analyzed on a case-by-case basis, taking "all relevant circumstances into account and … determin[ing] whether each particular position implicate[s] the fundamental purpose of the exception." *Our Lady of Guadalupe School v. Morrisey-Berru*, 140 S. Ct. 2049, 2067 (2020) (footnote omitted). As set forth *infra,* it is respectfully submitted that the ministerial exception is inapplicable to this case and as such, Defendants' motion should be denied.

In *Our Lady of Guadalupe, supra*, the U.S. Supreme Court referred back to its seminal case (*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 132 S. Ct. 694 (2012)) and noted that in determining whether or not the ministerial exception applies, no "rigid formula" should be utilized. *Our Lady of Guadalupe,* 140 S. Ct. at 2055, citing *Hosanna-Tabor, supra.* While the Supreme Court in both cases set forth a number of factors to consider, "[w]hat matters, at bottom, is what an employee does." *Our Lady of Guadalupe,* 140 S. Ct. at 2064. It is respectfully submitted that a review of what Plaintiff actually did while employed by Defendants establishes that the ministerial exception does not apply here.

Although no rigid formula is to be applied, the Court in *Our Lady of Guadalupe,* outlined the factors which should be considered by courts. These factors are: (i) job title; (ii) whether the position reflects a significant degree of religious training;[1] (iii) whether the employee held

---

[1] Even though the Supreme Court expressly held that title and training, while not dispositive, are certainly considerations in the analysis, Defendants argue that this Court should conclude that Plaintiff was allegedly a minister "***regardless of title or training****….*" *See* Defendants' Memorandum of Law, p. 29. To the contrary, courts must perform a case-by-case analysis, not take the shortcut that Defendants argue for – that merely because some courts (outside of the Third Circuit) have held that a principal can be a minister, that Plaintiff in the instant matter is automatically deemed a minister (without performing the requisite analysis).

himself out as a minister; and (iv) the job duties. *Id.,* at 2062. In the case at bar, as established *infra,* **none** of these factors apply to Plaintiff.

Plaintiff was a Principal at Defendants' school. Plaintiff did not teach religion, nor did he lead religious services. Plaintiff did not "educat[e] their students in the faith." *Id.,* at 2066. Because Plaintiff did not play a role in "faith formation," the ministerial exception does not apply.

It should also be noted that Defendants have "opened the door" into an inquiry as to the reason for Plaintiff's termination, by denying in their motion that Plaintiff was terminated due to any unlawful considerations. *See* Defendants' Memorandum of Law ("MOL"), p. 6, fn. 3. Plaintiff was indeed terminated due to issues pertaining to his cancer, as implied by *Defendants' own documents*. *See* Plaintiff's SOF at ¶13 (Defendants' report underlying Plaintiff's termination noted that: Plaintiff's "energy, enthusiasm, and dedication seems to have slipped," which was in part attributed "[d]ue to [Plaintiff's] personal illness.").

Thus, the stakes presented by Defendants' instant motion are enormous. Defendants are asking this Court to hold that a Marine Corps combat veteran who suffered from*, inter alia,* prostate cancer which required treatment and medical leave (*see* Plaintiff's SOF at ¶13, fn. 3), **_and all workers like him,_** should have **_zero civil rights job protection - even where, as here, the worker is fired for having cancer and/or taking medical leave._** In doing so, Defendants ask this Court to take an impermissibly overbroad misapplication of Supreme Court precedent. While the selection and retention of religious organizations' ministers are important, "[t]he interest of society in the enforcement of employment discrimination statutes is [also] undoubtedly important." *Hosanna-Tabor,* 565 U.S. at 196, 132 S. Ct. at 710.

At bottom, the Parties sharply contest the nature and extent of Plaintiff's job duties and whether or not they were ministerial in nature. Because numerous questions of material fact

remain on these issues, summary judgment should be denied. *See* Part III(D), *infra* (collecting cases for the proposition that whether or not the ministerial exception applies is a question of fact). For these reasons and for the reasons set forth herein (and in Plaintiff's SOF), Defendants' summary judgment motion should be denied.

## II.    <u>Statement of Facts</u>

Plaintiff fully incorporates by reference herein his SOF. Relevant facts will also be discussed in Part III, *infra*.

## III.    <u>Argument</u>

### A. Standard of Review.

Summary judgment is appropriate if "the record, including depositions, documents, … affidavits or declarations, … interrogatory answers, or other materials" … "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c). In considering a motion for summary judgment, "a court does not resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970). Once the moving party has carried its initial burden, to prevent summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue is established only if a reasonable jury could return a verdict for the non-

moving party based on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

As will be demonstrated below, because numerous genuine issues of material fact remain to be decided regarding the alleged application of the ministerial exception, Defendants' instant motion should be denied.

**B. The ministerial exception is inapplicable to the instant matter.**

Turning to the first of the four above-referenced factors noted by the Court in *Our Lady of Guadalupe, supra,* - job title - it is undisputed that Plaintiff was a lay principal and Defendants considered him and labelled him as such. *See* Plaintiff's SOF at ¶ 77. By contrast, while the two elementary school teachers in *Our Lady of Guadalupe* did not have the term "minister" in their titles, "their core responsibilities" were "teachers of religion." *Id.,* at 2066. Indeed, the Court cautioned against "attaching too much significance to titles…." *Id.,* at 2064. Yet, Plaintiff's "core responsibilities" were nothing like that plaintiffs' in *Our Lady of Guadalupe.* Defendants argue that Plaintiff's "articulated job requirements address ministerial obligations." *See* Defendants' MOL, pp. 15-19. Yet, Plaintiff's job description reflected only ***one out of 10*** different areas of responsibility that could arguably be religious-related, which was "School Ministry." *See* Plaintiff's SOF at ¶ 14.

Moreover, of that one responsibility, Plaintiff only had administrative responsibilities over the ministry, he **did not perform ministerial responsibilities himself**.[2] *Id*. Plaintiff *hired and*

---

[2] *See e.g., McMahon v. World Vision, Inc.,* No. C21-0920 JLR, 2023 U.S. Dist. LEXIS 211417, at *42-43 (W.D. Wash. Nov. 28, 2023) (emphasis added) ("Applying the ministerial exception   to the **principally   administrative** customer service representative position would expand the exception beyond its intended scope, **erasing any distinction between roles with mere religious components and those with "key" ministerial responsibilities**."); *MacDonald v. Grace Church Seattle,* No. C05-0747C, 2006 U.S. Dist. LEXIS 54187, at *7 (W.D. Wash. Aug. 4, 2006) (citations omitted) (emphasis added) ("And because Plaintiff was employed in an administrative role in which **her 'primary functions [did not] serve the church's spiritual and pastoral mission**,' she is not herself covered by the ministerial exception."); *Rosati v. Toledo,* 233 F. Supp. 2d 917, 921 (N.D. Ohio 2002) (citations omitted) ("The ministerial exception, however, does not entirely insulate the religious employer from the operation of federal

*supervised* a minister to perform those responsibilities – Plaintiff himself did not perform them. *Id*. Even going beyond Plaintiff's written job description, Defendants' "Executive Assessment Report" ("EAR") which was an "accurate and thorough" "360 evaluation" of Plaintiff's entire job duties, reflected *not one single reference* to Plaintiff actually performing ***any religious role whatsoever***. *See* Plaintiff's SOF at ¶ 13. *See Patsakis v. Greek Orthodox Archdiocese of Am.*, 339 F. Supp. 2d 689, 697 (W.D. Pa. 2004) (emphasis added) ("For purposes of the ministerial exception, **whether an individual is important to the *administrative* functioning of the Church is *critically less significant* than whether she is important to the *spiritual* functioning of the Church**.").

Defendants cite *Petruska v. Gannon Univ.*, 462 F.3d 294, 307 n.10 (3d Cir. 2006) for the alleged proposition that Plaintiff is still a minister, even though he supervised the ministry rather than performing such duties himself. *See* Defendants' MOL, p. 29. However, the plaintiff in *Petruska, supra,* was the *University Chaplain* who "held prayer services, and was traditionally involved in planning liturgies." *Petruska*, 462 F.3d at 307, fn. 10 (footnote and citation omitted). In the instant matter, Plaintiff's title; total lack of religious training; job duties; and total lack of a role in students' faith formation is not remotely comparable to the plaintiff in *Petruska*, *supra.* It is respectfully submitted that the *Petruska* matter bears no relevant factual similarities to the case at bar and should be disregarded.

As to the second factor under *Our Lady of Guadalupe,* Defendants do not even allege that Plaintiff was required to (or did) undergo *any* religious training, let alone *significant* religious training. Plaintiff never underwent any religious training, either prior to or after being hired, for

---

antidiscrimination statutes…. '[T]the exception would not apply to employment decisions concerning purely custodial or administrative personnel … Where no spiritual function is involved, the First Amendment does not stay the application of a generally applicable law such as Title VII to the religious employer unless Congress so provides.'").

his position at issue. *See* Plaintiff's SOF at ¶ 50. Plaintiff was never informed that any religious training was required or even encouraged for Defendants' Principals or other administrators. *Id*. Plaintiff never saw any documents nor had any conversation with anyone concerning any religious training for his position. *Id*. Clearly, Plaintiff's position as principal did not require any religious training, nor did Plaintiff complete any such training.

Plaintiff's cover letter and resume also did not reflect that he had any meaningful religious background. *See* Plaintiff's SOF at ¶ 47. Defendants attempt to rely upon the fact that Plaintiff went to Catholic-affiliated universities (*see* Defendants' MOL, p. 16), even though: one does not even have to be Catholic to attend either school; there is no evidence that Plaintiff ever took a single theology or religious class at either institution; and Plaintiff had never previously applied or worked for a Catholic school. *Id.,* at ¶¶ 46 and 47.

At his employment orientation, Plaintiff was distributed a "***Lay*** Administrator Packet." *Id.,* at ¶ 77.[3] Furthermore, in connection with his hiring, Plaintiff underwent clearances that were very similar to his public-school experiences. *Id.,* at ¶ 50. Plaintiff was specifically hired to improve Defendants' trade programs. *Id.,* at ¶ 46. Nothing is contained in King's letter to Defendants' community announcing Plaintiff's hiring which would reflect that Plaintiff would be performing any religious role. *Id.,* at ¶ 52. Moreover, there was nothing in Plaintiff's job offer letter which would indicate that Plaintiff would be playing any sort of religious role as Defendants' incoming Principal. *Id.* Defendants attempt to rely upon an "interview outline," even though they admittedly have no evidence that Plaintiff was actually asked such questions in his interview. *See* Defendants' MOL, p. 16. Even if Plaintiff had been asked such questions at a single interview session, that does nothing to establish the nature of the job duties which he actually performed.

---

[3] *See also McMahon v. World Vision, Inc.*, No. C21-0920JLR, 2023 U.S. Dist. LEXIS 211417, at *35 (W.D. Wash. Nov. 28, 2023) (denying application of ministerial exception even where the plaintiff's training "had some religious components….").

There is also no question that Plaintiff did not hold himself out as a minister. It is not disputed that Plaintiff held administrative responsibilities over some of Defendants' ministers, but *Plaintiff himself did not perform such roles.* Plaintiff hired the priests, but then sat with students during masses. *Id.,* at ¶ 16. Plaintiff was not responsible for the actual presentation of religious services. *Id.* Plaintiff helped organize retreats, but he did not lead any of them. *Id.* Plaintiff never edited any prayers nor taught or had any involvement with religious curriculum in any way. *Id.,* at ¶¶ 14, 16, 18 and 66. It is clear that Plaintiff was an administrator of the school (indeed the "chief operating officer") and was not a minister. *Id.,* at ¶ 16. These are very similar to the duties Plaintiff would have as principal at any school. *Id.* As such, it cannot be said that Plaintiff held himself out as a minister.

Finally, with respect to job duties, the Court in *Our Lady of Guadalupe* noted that there was "abundant record evidence that [the employees] both performed vital religious duties…. [The employees were] responsible for providing instruction in all subjects, including religion, **they were the members of the school staff who were entrusted *most directly* with the responsibility of *educating their students in the faith***." *Id.,* at 2066 (emphasis added). None of this applies to Plaintiff herein. In the case at bar, although Plaintiff supervised theology teachers, he did not teach any theology. *See* Plaintiff's SOF at ¶ 66. Plaintiff's supervision of the theology teacher would be no different from the supervision of any other teacher in any school. *Id.*

Defendants attempt to argue that Plaintiff "had ultimate authority and oversight over religious teaching." *See* Defendants' MOL, pp. 19-22. Defendants further argue that the exception should not only be applied to teachers, but also "to those who **educate students** in the faith…." *See* Defendants' MOL, p.6 (emphasis added). It is undisputed that Plaintiff did not teach religion (or anything else for that matter). However, Plaintiff never taught, wrote, edited, changed or

revised any theology curriculum or lesson plan. *See* Plaintiff's SOF at ¶ 66. This was nothing like the plaintiffs' job duties in *Our Lady of Guadalupe,* despite Defendants' mistaken arguments to the contrary. Plaintiff's job duties, whether set forth in his job description or the EAR, reflect that his primary role was the supervision of others – administrative, not ministerial. As such, the fourth and final consideration strongly militates against the application of the exception.

In *Our Lady of Guadalupe,* the Court reminded "courts to take all relevant circumstances into account and to determine whether each particular position implicated the fundamental purpose of the exception." *Id.,* at 2067. The Court explained that:

> it is instructive to consider why a church's independence on matters "of faith and doctrine" requires the authority to select, supervise, and if necessary, remove a minister without interference by secular authorities. Without that power, a wayward minister's preaching, teaching, and counseling could contradict the church's tenets and lead the congregation away from the faith. The ministerial exception was recognized to preserve a church's independent authority in such matters.

*Id.,* at 2060-61.

In finding against the employees, the Court clearly took into consideration the purpose of the exception, and held: "When a school with a religious mission ***entrusts a teacher with the responsibility of educating and forming students in the faith***, judicial intervention into disputes between the school and the teacher threatens the school's independence in a way that the First Amendment does not allow." *Id.,* at 2069 (emphasis added). It is respectfully submitted that the fundamental purpose of the ministerial exception is not even implicated in the instant matter. Plaintiff was not a teacher and was not entrusted with "forming students in the faith." Instead, Plaintiff held administrative responsibilities over others who did. As the ministerial exception does not apply to herein, Defendants' motion should be denied.

Indeed, there is recent Third Circuit jurisprudence which would support this outcome. Plaintiff's former job duties with Defendants establishes that the exception does not apply, much like the plaintiff in *Trotter v. United Lutheran Seminary,* 2021 U.S. Dist. LEXIS 142222, 2021 WL 3271233 (E.D.Pa July 30, 2021). In *Trotter,* the defendant attempted to dismiss one of the plaintiffs' claims pursuant to the ministerial exception, which was ultimately denied by the Court. In the *Trotter* matter:

> [the plaintiff] did not perform ministerial duties. She "oversaw admissions, financial aid, student services, housing, student activities, the candidacy process, [and] the ordination process." … [The defendant] categorized the [the plaintiff's] essential functions as admissions, financial aid, student services, and chaplain/student care. The chaplain/student care responsibilities included "**supervis[ing] the work of the current chaplain**-for-transition, providing referrals and follow up for students, staff and faculty desiring to make use of [the chaplain] resource," and "lead[ing] staff on the student care team, which offers pastoral care, health and wholeness education, and self-care education for students." [The plaintiff] ***did not lead any prayer groups or other religious service*** at [the defendant]. Also, even [the defendant's president] acknowledged that [the plaintiff] **never taught religion** to [the defendant's] students. **These facts support [the plaintiff's] claim that her position was *administrative* in nature**.
>
> …
>
> Nor did [the plaintiff's] "religious responsibilities" constitute ministerial functions. [The defendant] argues she had formal responsibilities such as facilitating the ordination process, providing chaplain offerings, helping ministry candidates, and working with bishops, as well as informal responsibilities such as leading staff in pastoral care. Yet, ***[the plaintiff] only oversaw those processes*** and provided referrals; she ***never performed ministerial duties herself***. Although [the plaintiff] attended a Lutheran conference, [the defendant] offers no evidence that suggests her attendance featured any ministerial acts. And her job description clarifies that ***she manages staff who perform such pastoral care duties without performing them directly***. I deny summary judgment on the ministerial exception theory.
>
> *Trotter v. United Lutheran Seminary*, No. 20-570, 2021 U.S. Dist. LEXIS 142222, at \*10-13, 2021 WL 3271233 (E.D. Pa. July 29, 2021) (internal record citations omitted) (emphasis added).

In the case at bar, Plaintiff's SOF (at ¶¶ 13 - 16; 18; 46; 47; 49; 52; 66; 72; 77; 78; 130; and 156) makes it clear that his role was extremely similar to the role of the plaintiff at issue in

*Trotter*. Here, although Plaintiff performed an administrative and participatory role in religious services, he never led them. *Id.,* at ¶¶ 16 and 77. Plaintiff also had some related supervisory responsibilities [*id.,* at ¶¶ 14 an 18], but as noted in *Trotter, supra,* this is insufficient to establish the applicability of the exception. Much like the plaintiff in *Trotter, supra,* Plaintiff's role with Defendants was administrative, not ministerial. As such, it cannot be said that Plaintiff was a "minister" and Defendants' instant motion should be denied.

In *Ference v. Roman Catholic Diocese of Greensburg*, Civil Action No. 22-797, 2023 U.S. Dist. LEXIS 8416 (W.D. Pa. Jan. 18, 2023), it was noted that "Courts consider the ministerial exception on a position-by-position basis." *Ference,* at *14, citing *Our Lady of Guadalupe,* at 2067. In *Ferrence, supra,* the Diocese's motion to dismiss was denied, based upon the allegation that it did not require that the plaintiff, a secular sixth grade teacher, to play any "role in faith formation and that none of his responsibilities related to religious instruction." *Id.,* at *16. Accordingly, the motion to dismiss pursuant to the ministerial exception was denied. *Id.,* at *17.

In the instant matter, it is undisputed that Plaintiff provided no religious *instruction*, and Defendants do not argue otherwise. Moreover, while Defendants spend much time and place great weight (*see e.g.,* Defendants' MOL, pp. 9 - 11) on the argument that Plaintiff was required to further its missions and objectives, and that its handbooks "affirm" religious "priorities,"[4] there is **no evidence (beyond self-serving conclusory allegations) that Plaintiff played any role in *faith***

---

[4] *See e.g., McMahon, supra,* at *37 (denying application of ministerial exception even where new hires contained requirements of: "'confessing they are committed Christians,' 'wholeheartedly' agreeing with [World Vision's] core principles,' communicating World Vision's Christian faith and witness accurately and with integrity, and participating regularly in prayer activities, devotionals, and weekly chapel services."); *Ratliff v. Wycliffe Assocs., Inc.,* No. 6:22-cv-1185-PGB-RMN, 2023 U.S. Dist. LEXIS 92811, at *12 (M.D. Fla. May 26, 2023) (footnote omitted) ("Defendant contends, however, that Plaintiff "held himself out as a minister of [Defendant's] religious mission by accepting the express conditions of his employment requiring him to 'sense a call from God to ministry'" and "meet [Defendant's] 'high standards for spirituality and the Christian faith.'" (Doc. 18, pp. 9-10 (emphasis in original)). Alas, the Court disagrees—contractually agreeing to maintain a sense of spirituality and faith is a far cry from accepting a job akin to a minister.").

11

**_formation_**. Defendants' alleged basis for the assertion that Plaintiff allegedly had a role in faith formation was because: he was a "role model" for the school's values; he told a single story about his experience serving in the military in Operation Desert Storm; and Williams felt as if he could confide in Plaintiff concerning Williams' "spiritual void."[5] *See* Defendants' MOL, pp. 20 – 22. Every other argument Defendants put forth amounts to circular reasoning (*see e.g., id.,* at p. 21, "Although not directly involved in teaching as a member of the Theology Department or serving as the Campus Minister, Mr. Chapla had ultimate responsibility for the success of these colleagues and he played a significant role in the faith formation of Fr. Judge students."). Defendants' arguments attempt to establish that Plaintiff played a role in faith formation simply because they say so. Such arguments, however, do not establish that Plaintiff's *job duties* amounted to forming students in the faith.

Plaintiff, in fact, did not perform duties like ensuring the spiritual growth of students – rather Plaintiff coordinated and planned with the people carrying out those duties. *See* Plaintiff's SOF at ¶ 49. This is significant, given that the Supreme Court has stated that is the primary concern under the exception. *Our Lady of Guadalupe,* at 2069 (emphasis added) ("When a school with a religious mission **_entrusts a teacher with the responsibility of educating and forming students in the faith_**, judicial intervention into disputes between the school and the teacher threatens the school's independence in a way that the First Amendment does not allow."). Again, this is simply not the circumstances present in the case at bar. Plaintiff did not instruct on religion, nor was he involved in "faith formation." Plaintiff hired and supervised the individuals who performed those roles - **he did not _perform_ them himself**. This is quite significant, since "[w]hat matters, at bottom, is what an employee does." *Our Lady of Guadalupe,* 140 S. Ct. at 2064. As

---

[5] Whether Williams did or did not feel comfortable confiding in Plaintiff does not establish that Williams confiding in Plaintiff *was part of Plaintiff's actual job duties*.

such, the application of the required analysis under *Our Lady of Guadalupe* warrants denial of the instant motion.

### C. Defendants' attempts to rely upon piecemeal statements contained in documents should be rejected as not reflective of Plaintiff's actual job duties.

Two other recent, post-*Our Lady of Guadalupe,* cases are highly illustrative and warrant denial of Defendants' motion. In *Bell v. Judge Mem'l Catholic High Sch.*, No. 2:20-cv-00829-RJS-JCB, 2023 U.S. Dist. LEXIS 90351 (D. Utah May 22, 2023), the ministerial exception was found to not apply to a teacher where, as here, the religious school defendant attempted to heavily rely upon assertions made in documents, as opposed to what the employee actually did (which is what the focus is supposed to be under *Our Lady of Guadalupe*). In *Bell, supra,* the defendants' arguments were rejected even though all teachers were required to acknowledge via contracts, handbooks and policies, *inter alia,* that:

> - the defendant Catholic School were ministries of the Catholic Church;
> - the school existed to instill Gospel teachings and values;
> - teachers were committed to the spirit of Catholic school education;
> - teachers affirmed the distinctive Catholic identity and mission of the school;
> - teachers shared in the catechetical ministry;
> - "Their daily witness to the meaning of mature faith and Christian living has a profound effect on the education and formation of their students; and
> - they are an integral part of the "faith community" and were expected to advance "students' knowledge and love of Jesus Christ."

*Bell,* at *8-9; 28-29

In rejecting the application of the ministerial exception, the court in *Bell* noted that the teacher did not: (i) teach religion; (ii) lead prayers or masses; nor (iii) was there any requirement to attend any religious training. *Id.,* at *29. In doing so, the court in *Bell* rejected the very proposition that Defendants attempt to put forth in the case at bar — that mere assertions contained in documents, handbooks and policies warrant the application of the ministerial exception. "Yet, even as Defendants ask for a sweeping application of the ministerial exception

13

for all JMCHS teachers who signed teaching contracts cross-referencing certain ecumenical and pedagogical policies, they try to circumvent the 'case-by-case fact-intensive' nature of the inquiry described by the Supreme Court in *Our Lady* and *Hosanna-Tabor*." *Bell,* at *30 (footnote omitted).

In the instant matter, Defendants attempt to circumvent the case-by-case analysis required by the Supreme Court, by attempting to rely upon cherry-picked "sound bites" from various documents, while ignoring the job duties *Plaintiff actually performed,* which were primarily administrative duties, not ministerial. *See* Plaintiff's SOF at ¶¶ 13 - 16; 18; 46; 47; 49; 52; 66; 72; 77; 78; 130; and 156. Indeed, Defendants attempt to take such an impermissible short-cut. Defendants would have this Court "start and end" the case-by-case analysis required under *Our Lady* and *Hosanna-Tabor* simply by reason of Plaintiff's utterance of a single "pledge and prayer" on one occasion! *See* Defendants' MOL, p. 3. Clearly, that is not what the Supreme Court called for in requiring a fact-intensive inquiry into plaintiffs' job duties, despite saying a single prayer on one occasion.

Ultimately, the court in *Bell* held that because the plaintiff neither "performed 'vital religious duties' or was 'entrusted with the responsibility of 'transmitting the [] faith to the next generation,'" the ministerial exception should not apply. *Bell,* at *32-33. "Indeed, it would be a remarkable expansion of the ministerial exception for the court to hold, as Defendants urge, that all JMCHS teachers necessarily joined the Catholic ministry based on the policies cross-referenced in their one-year employment contracts—without any consideration of the work the teachers individually performed at the school." *Id.,* at *33.

For these reasons, this Court should reject Defendants' attempted reliance in the instant matter upon statements set forth in "mission statements"; handbooks; letterhead; Plaintiff's email signature line; and other *pro forma* documents. *See* Defendants' MOL, pp. 4, 18-19, and 27. As set forth *supra,* Plaintiff's primarily administrative role as school principal, did not include the performance of religious duties, nor did he "transmit the faith to the next generation." Accordingly, Defendants' motion should be denied.

A similar analysis and outcome were reached by the Supreme Judicial Court of Massachusetts in *DeWeese-Boyd v. Gordon Coll.*, 487 Mass. 31, 51-54, 163 N.E.3d 1000, 1015-18 (2021), *cert. denied,* 142 S. Ct. 952, 952 (2022), even where the allegedly religious-related documentary evidence that the defendant attempted to rely upon suggested that the plaintiff-employee's duties were highly religious in nature.

The plaintiff in *DeWeese-Boyd* was an associate professor of social work. *DeWeese-Boyd*, 487 Mass. at 33. Her resume reflected work in the mission field, as well as a master's degree in theological studies. *Id.,* at 39. DeWeese-Boyd submitted a *curriculum vitae* (cv) which detailed her personal faith, as well as her views on faculty responsibility in a Christian school. *Id*. DeWeese-Boyd even made highly religious statements in her cv, regarding her "undeniable call to minister to others" and referenced her Christian commitments. *Id.* She even referred to herself as a "Christian scholar." *Id*.

The school attempted to rely upon a great deal of documentary evidence in support of its ministerial exception argument. The defendant's teachers were all required to: affirm the defendant's Statement of Faith; the handbook reflected that faculty were "Christian scholars … committing to imaging Christ in all aspects…."; be evaluated on, *inter alia,* faith, Christian thought and biblical principles; promote their disciplines from the Christian faith perspective; and

detail how they integrated faith in their learning. *Id.,* at 35-37. During the plaintiff's employment, the defendant even amended its handbook with the statement that all faculty members "are both educators and ministers to our students." *Id.,* at 37-38. As a professor, DeWeese-Boyd: engaged in teaching and scholarship from a Christian perspective; and had duties (per the defendant's handbook) to continuously explore Christian worldview, to help students connect content with Christian thought, and to encourage students to develop in accordance with biblical principles. *Id.,* at 47.

Cutting against the application of the exception was the fact that DeWeese-Boyd: was not ordained; was never required to complete any religious education; never held herself out as a minister; did not teach religion; did not conduct bible studies; and did not preach. *Id.,* at 40-41.

In *DeWeese-Boyd, supra,* the defendant's handbook contained the provision that all faculty had a duty to "participate actively in the spiritual formation of our students into godly, biblically-faithful ambassadors for Christ and to seek to engage our students in meaningful ways to strengthen them in their faith walks with Christ." *Id.,* at 48. The defendant further attempted to argue that every employee - including janitors and kitchen staff were ministerial, since they were expected to model "Christ-like behavior" for the students. *Id*. In rejecting this overly broad sweeping generalization, the court noted that "this line of argument appears to oversimplify the Supreme Court test, suggesting that all Christians teaching at all Christian schools and colleges are necessarily ministers. If this were the case, the Court could have simply said so and not developed the two-prong test and functional analysis laid out in *Our Lady of Guadalupe*." *Id.,* at 48. In the case at bar, Defendants' arguments suggest that any Principal at any religious school would automatically be deemed a minister. Given Plaintiff's mostly administrative (and not ministerial) job duties, this is clearly not the case.

In distinguishing the plaintiff's job duties in *DeWeese-Boyd* from the plaintiffs' job duties in *Hosanna-Tabor*, the court noted that the plaintiff's position did not require formal religious training; she did not receive a different title because of it; she did not view herself as a minister; and she never held herself out as one. *Id.,* at 48-51. This is precisely the circumstances of the instant matter, as Defendants do not even allege that Plaintiff: (i) received any religious training (ii) had any religious title; or (iii) viewed himself or held himself out as a minister. Due to these important differences, "we conclude that a faculty member with DeWeese-Boyd's responsibilities at Gordon is significantly different from the ordained ministers or teachers of religion at primary or secondary schools in the cases that have come before the Supreme Court." *Id.,* at 51-52. The same result should be reached herein.

The court in *DeWeese-Boyd* went on to caution against too broad of a reading of *Our Lady of Guadalupe,* and rejected the contention that all religious schoolteachers should automatically deemed ministers. *See also Richardson* v. *Northwest Christian Univ.*, 242 F. Supp. 3d 1132, 1138-1139, 1145-1146 (D. Ore. 2017) (emphasis added) ("If plaintiff was a minister, it is hard to see how any teacher at a religious school would fall outside the exception. Courts have properly rejected such a broad reading … , **which would permit the ministerial exception to swallow the rule** that religious employers must follow federal and state employment laws").

It is respectfully submitted that this Court should also reject Defendants' overly broad application of the *exception*. As explained in *DeWeese-Boyd:*

> The integration of religious faith and belief with daily life and work is a common requirement in many, if not all, religious institutions. As a result, **the breadth of this expansion of the ministerial exception and its eclipsing and elimination of civil law protection against discrimination would be enormous**.
>
> We recognize that a case need not mirror *Hosanna-Tabor* and *Our Lady of Guadalupe* in order for the ministerial exception to apply. Here, however, the facts are materially different. Thus, the significant expansion of the ministerial

exception doctrine requested by Gordon is not dictated nor, do we believe, directed by existing Supreme Court precedent. It is our understanding that the ministerial exception has been carefully circumscribed to avoid any unnecessary conflict with civil law.

**In sum, we conclude that DeWeese-Boyd was expected and required to be a Christian teacher and scholar, but not a minister**. Therefore, the ministerial exception cannot apply as a defense to her claims against Gordon.

*DeWeese-Boyd,* at 54 (footnotes omitted) (emphasis added).

Plaintiff was a Principal at a Catholic school, but not a minister. Plaintiff does not dispute that Defendants are religious institutions, or that Plaintiff had administrative and participatory responsibilities in religious matters. Defendants argue that Plaintiff attended his "Induction Mass," where he was "bless[ed] in his execution of his position." *See* Defendants' MOL, p. 23. Much like the above referenced religious assertions contained in handbooks and other religious organizations' documents, however, a single ceremony on one occasion does not mean that Plaintiff's day-to-day job duties constituted a ministerial role.[6]

Plaintiff neither had the title or training of a minister; never held himself out as a minister; did not personally handle ministerial duties; and most importantly, had **_no_** "**_responsibility of educating and forming students in the faith._**" Under these circumstances, the ministerial exception should not apply. It is clear, based upon Defendants' own EAR, that Plaintiff's cancer was taken into account in connection with his termination. The civil law protections against discrimination that Plaintiff is entitled to should not be eroded by an overly broad misapplication of what the Supreme Court intended to create. *See Hosanna-Tabor*, 565 U.S. at 196, 132 S. Ct. at 710 ("The interest of society in the enforcement of employment discrimination statutes is undoubtedly important."). Because Defendants' "sound bites" do not overcome the facts of what

---

[6] Defendants also attempt to rely upon the fact that Plaintiff served as a Eucharistic minister on one single occasion. *See* Defendants' MOL, p. 23. However, on one and only one time, the minister was short on people and asked Plaintiff to fill in and help distribute "the Host" during a mass. *See* Plaintiff's SOF at ¶ 79. A one-time occurrence is, by definition, not part of one's *regular* job duties.

Plaintiff actually performed - administrative, as opposed to ministerial duties - the Court should deny Defendants' motion.

### D.  Questions of material fact necessitate the denial of Defendants' motion.

In *Bell v. Judge Mem'l Catholic High Sch.*, No. 2:20-cv-00829-RJS-JCB, 2023 U.S. Dist. LEXIS 90351 (D. Utah May 22, 2023), the Court held:

> In moving for summary judgment, Defendants have the burden of presenting sufficient evidence to prove Bell was a minister—namely, that he was "**entrust[ed]… with the responsibility of educating and forming students in the faith**." If Defendants meet that burden, the burden then shifts to Bell to "bring forward specific facts showing a genuine issue for trial." Given the fact-specific nature of the determination, the applicability of the ministerial exception therefore turns on the circumstances of Bell's employment.

*Id.,* at *28 (footnotes omitted) (emphasis added).

Whether or not the ministerial exception applies is a question of fact. *See e.g., Clark v. Newman Univ., Inc.*, No. 19-1033-KHV, 2022 U.S. Dist. LEXIS 164360, at *39 (D. Kan. Sep. 12, 2022) ("To determine whether defendant entrusted plaintiff with the responsibility of transmitting the Catholic faith, a jury will have to weigh the relative credibility of the witnesses. On a motion for summary judgment, the Court cannot engage in that task. Therefore, the Court overrules defendant's motion for summary judgment on its ministerial exception defense."); *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1026 (10th Cir. 2022) ("the question of whether an employee is a minister is a fact-intensive inquiry, rather than a legal determination"); *Hartwig v. Albertus Magnus Coll.*, 93 F. Supp. 2d 200, 211 (D. Conn. 2000) ("On the present record, however, the Court concludes that a genuine issue of material fact exists as to whether Hartwig's duties and responsibilities were primarily religious for the purposes of Free Exercise Clause analysis. Therefore, the Court cannot conclude at this time that, as a matter of law, review of the College's decision to terminate his employment is barred by the Free Exercise Clause."); *Butler v.*

19

*Archdiocese of Galveston Hous.*, No. H-08-897, 2008 U.S. Dist. LEXIS 138802, at *12-13 (S.D. Tex. July 17, 2008) (denying motion to dismiss and holding: "Whether Ms. Butler or her successors qualifies as a 'minister' is a contested question of fact."); *Woods v. Seattle's Union Gospel Mission*, 197 Wash. 2d 231, 252-53, 481 P.3d 1060, 1070 (2021) ("[W]e apply the federal ministerial exception test established in *Hosanna-Tabor* and clarified in *Our Lady of Guadalupe*. A material question of fact remains concerning whether the SUGM staff attorneys qualify as ministers.").

Defendants argue that because King repeatedly referred to Plaintiff as an alleged minister (in conclusory deposition testimony), therefore Plaintiff must be a minister. *See* Defendants' MOL, p. 17. Defendants make a similar argument, merely because Campellone called Plaintiff "the pastor of the school" at his deposition.[7] *Id.* Yet, Plaintiff: vigorously disputes these mischaracterizations; did not perform ministerial duties; did not consider himself a minister; and did not hold himself out as one. *See* Plaintiff's SOF at ¶¶ 13 - 16; 18; 46; 47; 49; 52; 66; 72; 77; 78; 130; and 156; *see also* Exhibit K, ¶¶ 4 – 7, 17. Defendants argue that Plaintiff testified that he was "required to improve ministerial function. *See* Defendants' MOL, p. 17. But the testimony Defendants cite clearly reflects that Plaintiff was referring to his *administrative responsibilities* to supervise ministerial employees, not perform ministerial duties himself (which is what Supreme Court precedent requires for the application of the exception).[8]

---

[7] Defendants not only attempt to reply upon baseless, conclusory testimony, they also ignore Campellone's subsequent testimony as follows:

> Q. Just to be clear though, Mr. Chapla is not a pastor?
> A. No, but I think, like, so if you look at -- **_yeah, he's not a pastor_**.

> Ex. Q, 14:2-5 (emphasis added).

[8] *See* Ex. A, Plaintiff's dep., 81:15-23 (emphasis added):

> Q. And **as administrator**, yes or no, that was an obligation that you had?
> A. I was required to attend, yes, ma'am.

Defendants further attempt to claim that Plaintiff was a minister because he distributed class rings at graduation. *See* Defendants' MOL, p. 23. Yet, Plaintiff's role during Defendants' "ring mass" was to welcome the families; shake the students' hands; give them a ring; and perhaps "close out" the ceremony. *See* Plaintiff's SOF at ¶ 156. Plaintiff, at no time, considered himself as performing the duties of a minister, and he was not one. *See* Plaintiff's SOF at ¶¶ 13 - 16; 18; 46; 47; 49; 52; 66; 72; 77; 78; 130; and 156; *see also* Exhibit K, ¶¶ 4 – 7, 17.

Here, because the Parties greatly dispute the nature of Plaintiff's job duties, there are genuine issues of material fact which preclude a factual finding that Plaintiff was a minister. Because the evidence must be looked at in a light most favorable to Plaintiff at this juncture, it is respectfully submitted that Defendants' motion should be denied.

## IV.    <u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

<u>*/s/ Adam C. Lease*      </u>
Adam C. Lease, Esquire
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
*Attorneys for Plaintiff*

Dated:  February 9, 2024

---

Q. No, sir. To improve the ministerial function?
A. Yes. We were -- we needed some improvement in some of those areas as a school, and that's how I looked at it again.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PETER CHAPLA | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | CASE NO.: 22-3971 |
| v. | : | |
| | : | |
| FATHER JUDGE HIGH SCHOOL | : | |
| and | : | |
| THE ARCHDIOCESE OF PHILADELPHIIA | : | |
| D/B/A ARCHDIOCESE OF PHILADELPHIA | : | |
| SCHOOLS (SECONDARY SCHOOLS) | : | |
| and | : | |
| THE OFFICE OF CATHOLIC EDUCATION | : | |
| | : | |
| Defendants. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I certify on the date set forth below that I served Defendants with Plaintiff's attached

Memorandum of Law via ***electronically filing only***:

> Eileen Keefe, Esq.
> Jackson Lewis, P.C.
> Three Parkway
> 1601 Cherry Street, Suite 1350
> Philadelphia, PA 19102
> *Attorneys for Defendants*

<u>/s/ Adam C. Lease</u>
Adam C. Lease, Esquire

Dated: February 9, 2024